Mr. Robinson. Thank you, Your Honor. My name is Philip Robinson. May it please the court, I represent Patrice Johnson and Rogers Morgan. This case concerns the Real Estate Settlement Procedures Act servicing provisions specifically at 12 USC 2605. For purposes of today, when I say RESPA, I mean the RESPA servicing statute. The court below dismissed plaintiff's complaint, the opponent's didn't address the merits of their claims. The merits of their claims deal with the credit protection provisions of RESPA and the companion regulation. The court considered and looked at the plaintiff's qualified written or correspondence, which plaintiffs are qualified as qualified written requests and notices of error under the regulation. In the joint appendix extract at 82 to 85 is Mr. Morgan's correspondence and a complete copy of Ms. Johnson's correspondence is at joint appendix 129 to 134. I point that out as to Ms. Johnson's because below Caliber didn't, it's also in their motion to dismiss, they submitted a portion of her correspondence but not the complete correspondence. The district court dismissed the case finding that she didn't need to reach the merits of the appellant's claims because neither correspondence in the court's view at the motion to dismiss stage qualified as a qualified written request in the RESPA or a notice of error under the companion regulations. And we think that was an error and we would ask the court to reverse that ruling to permit this case to go forward. Now there are few and far between cases from this circuit and other circuits addressing the scope of the qualified written request provisions under RESPA since it was amended under the Dog-Frank Act. But we think as we do with all statutory analysis, looking at the statute as a whole, the particular subsections that are involved here are subsections E, K, and J. And starting with the statute, looking at the statute, both correspondence qualify as correspondence entitled to the protections under the statute. E is the qualified written request provision that was not amended specifically in Dodd-Frank in the context that's before the court today except for the timing of certain correspondence in response to letters. Dodd-Frank added subsection K. Subsection K defines what standard mortgage servicing duties are. And in the context of the older case law, it expanded the scope of what RESPA covers. And in particular, not only does RESPA cover the collection and allocation of payments from mortgage borrowers and payments to investors on mortgage loans related to mortgage servicing, but RESPA also covers... Jump around. But I got two sort of specific questions with respect to the notice of error. And it seems like you argue that it falls under 1024.35B7. At least you suggest that in your opening brief. And do you think... Is that true? Do you think that Mr. Johnson's claim falls under B7? Your Honor, Ms. Johnson's... That's fine, Your Honor. Ms. Johnson's correspondence we think qualifies under the statute. But to answer your question, we do think it falls under B7 in the regulation as well as B11. Okay, so help me on B7 to understand why you meet the requirement of addressing 1024.39, right? Which is not loss mitigation in general, right? But it's a very specific requirement of servicers merely to provide information about loss mitigation options. Right. And it's actually, Your Honor, accurate information at the early intervention. And you can see from the well-plaid facts, Your Honor, she, like many other families, her family fell behind on their mortgage. They applied for a loan modification. They were approved for a loan modification, she was. And she made all of the trial payments at no point in that early process, that early intervention process, that we think... I understand the fact, but can you tell me specifically why you think what you're describing falls under 1024.39? With the early, the 1030, the 39, Your Honor, is the servicer has to provide accurate information, early intervention information to the borrower. Here, there was no discussion in the early intervention to Ms. Johnson that she could not be considered for a loan modification based on... No, but that's the difficulty, right? So that's the specifics, right, of whether they correctly evaluated her eligibility for loan modification. But 39 doesn't address whether they correctly evaluated her, but is instead very specific written notice about the availability of some loss mitigation. Right, and in the conclusion, it's easier for her claim, Your Honor, and I concede, Your Honor, that it is difficult, but it is easier to understand her claim that they didn't offer her accurate, that's the key word that's required in 39, early intervention information, because of the conclusion that they reached at the end, which was she was not eligible based on a legal error. So now, if the court finds that her correspondence doesn't qualify for B7, we certainly think that it falls under the catch-all, any other error related to mortgage servicing in this circumstance, that they made a legal error in evaluating Ms. Johnson's loss mitigation application by concluding that a fixture lien would take a priority over the real property lien. So help me understand, and I'll stop and let you get back to your argument. These are just the two things that I wanted to make sure that I understood. It is that when we look at the Federal Register, it says that a fair to correctly evaluate a mitigation is not a covered error under the final rule. It does not fit under B11, right? So that that's what the agency is telling us, right? So I understand you want to say, well, maybe we can come up with a way for it to do it. I don't see that either, but don't we have to give deference to the agency who tells us, no, the failure to correctly evaluate a borrower for loss mitigation is not The agency doesn't quite go as far as your honors summaries provide. The agency does say you may not use the notice of error process for an appeal of a loss mitigation denial. Let me read it and tell you what I'm wrong. The Bureau declines to add a servicers failure to correctly evaluate a borrower for loss I'm not sure why that's ambiguous. Well, your honor, because if you read her correspondence, she's not asking for them to review their decision to deny her. She's asking them to correct their policy and practice and procedure that assumes a fixture lien takes a priority. There's a distinction and the regulations go further in the commentary. That's what your honors looking at. So into the commentary, the commentary doesn't say that you can't address issues that may arise out of loss mitigation in this context, but the commentary goes further and just as Ms. Johnson did, simultaneously to this correspondence that's before the court, she completed her appeal under 1040, the denial. She did that in a separate process. The complaint lays out that she did that and it was successful. And what she's doing in this correspondence is asking for information for why they determined that a fixture lien would take a priority under Maryland law over the mortgage. And so we think in that that narrow sliver. Now, we've asked the court to take notice of a meekie brief in this pending second circuit case. They lay out, your honor, a rule, Judge Richardson, to answer your question. In the rule that the CFPB lays out and they go through the same official commentary that I just outlined generally and you quoted from, but they lay out a rule that goes something like this. If the QWR can be answered without reversing a decision on mitigation, it's permissible. Now here, we don't have a situation where Ms. Johnson did not exercise her appeal rights under 41 simultaneously, but let's assume she did not. And she just did the qualified written request and she asked for them to reverse the denial of her loss mitigation. That would be improper, your honor. But in this instance, it's not improper because that's not what she was asking for. She was asking for them to understand that they had made a legal error. And the reason she's still a borrower, but not to reverse that legal error. It's not in the correspondence. That was the avenue to do that legal error and reverse the denial of her loss mitigation was through the appeal process on loss mitigation. That's not in this case. She also asked in the correspondence for information they used to make their decision. Why would a simultaneous crack as Ms. Johnson did? Because she might need to supplement her appeal once she understands how they came up with this decision. You can see in her correspondence, she provided the citation to the guidelines governing her loan and she provided the citation to Maryland law that don't support the conclusion. But perhaps, Caliber had some other basis. So she asked for that information and in the real world, practice world, if they had come back with something, then she could have supplemented her appeal that was then pending. In addition, so that sort of jumps to the regulations as to Ms. Johnson. Under subparagraph K of RESPA, Dodd-Frank expanded inquiries and standard servicer duties to prevent foreclosure. And loss mitigation is a bread-and-butter way to prevent foreclosure. So the district court's ruling that any QWR or notice of error related to loss mitigation is not proper, can't be reconciled with the fact that Congress expanded the scope. And when you read E, K, and J together, clearly loss mitigation is subject to servicing and a those questions. Now Mr. Morgan, this letter, this handwritten letter, is pretty specific and he addresses four different problems. He's talking about the loan balance on his loan. On the one hand, as of one date, their loan balance is alleged to be $16,000. Then he calls on the telephone on another date and it's $30,000. He asked Caliber to correct its records. He says, quote, your offices are reporting this wrong amount to this credit agency is affecting my employment. He has addressed a specific error. Now the court below found that wasn't specific enough or in essence it was overbroad. But he didn't just do his 84. The credit report confirms the conflicting balances and he specified the days that he was told a certain balance. And interestingly enough, on the credit report is the same loan reported by the prior servicer with a zero balance. That is a legitimate QWR notice of error to be sent by a borrower. Although it was in hand and maybe a lawyer might have written it differently, it provides enough information that Caliber knew of the problem. The statute does not exempt very few correspondence from a borrower, except you can't write a QWR notice of error on a coupon. You can't write on some other written statement like a periodic statement from Caliber. You have to write other correspondence. That's the only exemption in the statute and it has to be in writing. So the case law, the circuit case law, that sort of confirms that both these correspondence qualify and the court below, you know, was an error. You can look at the Medrano case. It says there's no magic words. The Catan case from the Seventh Circuit, no magic words. The Poindexter case, from the precedent from this court, says facilitating loss mitigation is a standard servicer duty. The Finster case, Eleventh Circuit, there needs to be no absolute clarity in the correspondence for it to qualify as correspondence. We would ask you that the court look at the correspondence provided. It qualifies under the statute and the regulations and the court below's summary decision. May I continue, Judge King? I just conclude for my opening. Go on. That we'd ask that the court reverse the summary decision below that neither of these correspondence and all the inferences pled in the complaint related to them in a like most favor to the plaintiffs in the court below should be These correspondence qualify as qualified written request and notices of error and they should be able to reach the merits of their claims that weren't addressed below. Unless there's any other questions, I'll save my time for rebuttal. Very good, Mr. Robinson. We appreciate it. Mr. Fitzgerald? Yes, Your Honor. May it please the court, Matt Fitzgerald on behalf of Caliber Home Loans. This case can be resolved and the district court properly affirmed on the basis of two straightforward holdings. First, the Morgan letter is not a QWR at all. And second, the Johnson letter does not dispute any payment. Now, to be clear, the sole provision of RESPA at issue in this case is the credit reporting suppression provision. That provision requires a letter to be a QWR and also to dispute a payment in order to trigger that provision. The Morgan letter fails at step one and the Johnson letter at step two. Now, to start with the Johnson letter, there's been a fair amount of discussion already about whether it qualifies as a notice of error and it does not for the provided by the CFPB. Opposing counsel argues that the letter isn't really disputing the denial of a loan modification. I believe that it is. It's in the record at page 87 to 88. She says that the error, she says, quote, it would seem to be an error on your part to say that providing a modification, providing me a modification that I am qualified for is not correct your errors. But ultimately, even more straightforward than this is a finding that the Johnson letter does not dispute any payment. Both regulation X and RESPA on its face specifically require that to trigger credit suppression. RESPA section 2605E3 requires a QWR to be, quote, related to a dispute regarding the borrower's payments. And regulation X says almost exactly the same thing. It only pauses credit reporting, quote, regarding any payment that is the subject of the notice of error. The Johnson letter is not about any payment. She says, and it seems undisputed, counsel has also said she had a mortgage. She fell behind in her payments. Undisputed. She was a loan modification. Undisputed. She made the payments under the loan modification. Undisputed. She failed to get a loan modification at first because of a problem totally unrelated to her payments, confusion over the solar panels lien. The CFPB has been clear that that is properly addressed by the regulations section 1024.41. And as counsel has said, she actually followed that path totally separate from this one, took her appeal, prevailed, got the loan modification that she wanted. Essentially, the statutory scheme worked just fine. But that has nothing to do with disputing a payment and suppressing credit reporting, which is the sole provision of RESPA that Caliber has been Does the record include the report that your client made to the credit reporting agencies? Your Honor, the letter from Mr. Morgan immediately after it in the record, which I think is a JA 84, it includes a one to two page, looks like a printout from a credit reporting agency. But it doesn't have what you sent to the credit reporting agencies, is what I'm asking. No, not at all. No, Your Honor. So as so turning to the Morgan letter, the Morgan letter is not a QWR at all. RESPA defines QWR. And one of the things that it requires in order to be a QWR is quote, a statement of reasons why the account is in error. And what this letter has is essentially it says a year ago, someone else, a third party, not you, says I owed $16,000. And today you say I owe $30,000. Please correct your records. You're reporting the wrong amount to the credit agency. But why isn't that a statement of error? You are reporting the wrong amount. Your Honor, it's not a quote, statement of reasons that the account is in error. The numbers are not even in conflict. There isn't any. There isn't any conflict on the face of owing $16,000 one year and $30,000 on the same loan a year later. In fact, in his complaint, he points out that his loan payment was about $1,100 a month. So it actually makes good sense that that could change like that over the year. And he doesn't say, I think the $16,000 is right. Wait, that you would owe more a year later than you did a year prior? Yes, exactly. That makes sense? Yes, certainly. If no payments are being made, there would be taxes, there would be insurance, and there would be the absence of payments that could easily be building up at that sort of level. But it's also quite notable, of course, what isn't in the letter. He doesn't say, I think the $16,000 is right and the $30,000 is wrong. Can you just make, can I go back? Can you just make sure that I understand that? So if I, I like round numbers. Can we use $1,000 instead of $1,100? So if if I took a year where I failed to make $1,000 payments, that wouldn't, those $1,000 payments wouldn't add to the loan. There might be taxes or other things, but the failure to make those payments wouldn't add to the loan. They would only serve to not subtract from. So I'm having a little hard time seeing how we get just by failure to make a payment, how it goes from $16,000 to $30,000. Well, Your Honor, it could go, so there would be taxes and insurance, which would be on the full value of the house, essentially. I mean, potentially those alone could be as high as $14,000. There also would, there also could be issues with, I think there could be reasons why $16,000 could change to $30,000 over the course of a year if no, if no payments were made. What other than taxes and insurance, I mean, just hypothetically, I don't, I'm not suggesting you know the answer to this, but you're more familiar with this field than I am, to say the least. So what, what, what could it be? Taxes, insurance, I guess there could be penalties for failing to make payments, but what else could it realistically be? Well, Your Honor, I think the, the interest, the unpaid interest would be accruing also during that time. So normally if you were making payments, the interest would be, you'd be chopping away at the interest, but if you weren't making the payments, the interest would be increasing as well. Well, this, this letter provides enough to, for Caliber to, to notice the error, I would think. Couldn't Caliber identify the account of Mr. Morgan based on this information? Talk to Thomas and provide it as the ID number of the person he called. Doesn't Caliber have records of those calls? Yes, certainly, Your Honor. So part of the definition of a QWR is it identifies the borrower in the account, and we're not saying that this doesn't identify the borrower or the account. It's that the next part of the definition of QWR requires a statement of reasons why the account is in error, and that's what's missing here, because he doesn't say that the, he doesn't say the 16 is right and the 30 is wrong, or the 30 is right. Well what does please correct your records mean then? You don't correct unless something is wrong. You don't ask somebody to correct it unless something's wrong, and the two numbers don't match each other. Right, Your Honor, but of course over a year's time they wouldn't, you wouldn't expect them to match each other, but I think there's no difference. You wouldn't expect them to double either, would you? Well they could, Your Honor, for the, I'm sorry. I say Judge Thacker's got you in the corner. Well, so Your Honor, here's another thing to keep in mind here. The complaints in this case, in the complaint, Mr. Morgan actually gives a this was a 15-year loan, and I paid it off years ago. I actually owe nothing, and so if you think about that, which he's now pleaded in the case, and then you look at this letter, and you say what in the letter that he sent us would have invited us to look for that error, would have specifically identified that error, and given a statement of reasons, there is no such thing. So that just shows. So do you think it would be, would your, would your claim be different if, if in fact the error that was being alleged is that it should be $16,000 instead of $30,000? You might be able to divine that from the information that's provided, but your, your point is a different one, which is because he's claiming neither $16,000 nor $30,000 is the correct number, that if there was no way or not a reasonable way for you to determine that. Yes, Your Honor, so essentially what I'm saying is he's, he's pleaded himself even backwards from the letter, because now that we have the pleading, we know what his actual issue was, what his actual concern was, and what his statement of reasons was, and there's nothing that would suggest anything like that in the letter. And, and perhaps, I mean, arguably, specifically that you're reporting the wrong amount to the credit agency. Right. And what, well, what's so unclear about that is, of course, the lower amount is the amount that he seems to be saying we were, that we reported to the credit agency. So it's, it's almost, the letter may grammatically suggest he thinks $30,000 is the right number, but it's, it's odd that he would be contacting us to say your current number is right. It doesn't quite make sense. And that's our point. Because it's an error. And that's what he's, go ahead, Judge. You all are using what they used to call in the law, code pleading. Before we had the rules of procedure in the court system, some states, and some states still have, they have what they call it, in some countries, code pleading. You've got to use it in true form. You can't do anything. This is just really a federal regulation that you're dealing with lay people. Well, certainly, Your Honor. But of course, what I'm saying is, if he had said what he said in the complaint in his letter, it would quite clearly qualify as a QWR. But there isn't any real difference. I mean, anyone can write a letter that says, this is my name, and my account is in error. Please correct your records. That lacks the quote, statement of reasons that's required in the statute. But there's more in the Morgan letter than what you just said. There are dates and amounts that differ, the name of a person that Mr. Morgan talked to, the ID number for that person. And you were saying that maybe you could get to the $30,000 amount in a year if payments weren't being made in a year. But it also says $630 on my account in late charges. Do you only charge $50 a month for late charges? Well, Your Honor, it's not clear. The late charges could be- $52 a month for late charges. They could be more than that, Your Honor. I think it depends on, it's unclear what he means by late charges. But we're- I'm just asking, it was really going back to you saying, this amount could be $30,000 because if he didn't pay for a year, then the amount would go up that much. But if he didn't pay for a year, the $630 late charges would have been much more, I would imagine. So I was just pointing out what I see as maybe a flaw in your analysis as to what those numbers might mean. And he's clearly trying, I'm sorry to interrupt you, Judge, but he's clearly trying to give you information, good information. He even gives you the name of the person he talked to when he called you with an ID number, 27662, and specifically gives you the amounts. That's the fellow Thomas that gave him the $30,000 and the $630. He's giving you information. And once he's records fixed. He is, Your Honor, but there isn't adequate information in here to pinpoint the error and to investigate it. And I think maybe if we look a little bit more broadly at the statute, two points. One is this term statement of reasons, so we're trying to figure out what is an adequate statement of reasons. The exact same phrase statement of reasons appears in the immediately following provision of RESPA E2, where it requires a servicer to give a statement of reasons back to a borrower in response. And so when asking what is good enough to create a statement of reasons, when we look at this letter, which is difficult to make sense of, we've been going around and around about it. Well, if you just called Mr. Thomas, whose ID number is provided, who presumably works for Caliber, I'm sure Mr. Thomas or Ms. Thomas could help clear it up. Well, but Your Honor, you said it was difficult to investigate, but there's a Caliber employee's name and ID number in the letter. So why can't you investigate it? Well, Your Honor, I don't think he's, I don't think he's asking us to investigate Thomas at a certain ID number. He seems to be trying to say something is wrong with my loan balance. No, I know. You said that, I understand. I thought you said there's nothing to investigate. You can't investigate it. You can't investigate what the problem is here, but you can because you can just start with talking to your Caliber employee, last name Thomas, ID number 27662, and look at their records on September 20th. I bet they have the account number in their records. Yes, Your Honor. I mean, we can identify the account, but for the purposes of the rest of RESPA, the reason why the statement of reasons requirement exists is it's supposed to, it requires borrowers to, or servicers, I'm sorry, to respond very quickly. Within 30 days, they're supposed to respond and say, we've looked into this, there is an error or there wasn't. Here's our statement of reasons why it's right or wrong, and to investigate it that way. And for someone to say, essentially, here's what you say my account balance is, you're reporting the wrong amount, go, is not an adequate statement of reasons there, any more than if the servicer wrote back and said, we talked to Thomas and he still thinks it's $30,000, that wouldn't be a statement of reasons either, coming back from a servicer to a borrower. So how would you have us, just give me sort of the, like, how would you have us interpret the statement of reasons? What is required, both from the borrower in E1 and the servicer in E2? What would your interpretation of that phrase, which obviously the statute requires of both, what would it mean? Your Honor, I think it means that the, coming from the borrower to the servicer, it's supposed to be a pinpointed error, such that there's a concrete thing, a specific thing, the servicer can look into and respond within 30 days. So in other words, if he had said in this letter, which he clearly knew because he pleaded it later, these account balances are wrong because I paid off this whole loan two years ago and I actually owe nothing, boom, that's plenty. That's plenty. And so when, because he has that in his complaint, it just shows how short this letter is because no one would think to investigate, looking back multiple years to the previous servicer, did he pay off this whole loan? You wouldn't know or think that based on this letter. And that's why it falls short of an adequate statement of reasons. Similarly, I think coming back from the servicer to the borrower, the servicer would be likely to be sued if they just said, here's the number flat out. The whole point is, here's the number we show that you've paid these payments on these times. Here's where we come to this number. That is what the servicers do and what's expected of them. The point being is that you can't just show an error. You must state the reasons for why it's there. The statement of reasons is a why question. Yes, your honor. And it's a craving for a bit of detail for the sort of thing that can be investigated within 30 days and responded to within 30 days, which the other provisions of RESPA require. If the court has no further questions, I respectfully ask the court to affirm. Very good. Thank you very much. Mr. Robinson? Yes, your honor. In pointing out to Ms. Johnson, my friend claims that her letter had nothing to do with payments. The second paragraph, last line of her letter at JA-129 says, I was previously approved and I have made and continue to make each trial payment in reliance of two-year representations to me. But counsel, that's not, so that's, I think, misrepresenting the argument. The question is not whether the letter regarded payments, but the argument is the statute and regulation prohibit, prefer, furnishing adverse information to a reporting agency regarding a payment. Right? And so if they just report the loan balance, I take his argument to be that if you just report the loan balance, that is not information regarding any payment. Your honor, I'm referring to Ms. Johnson's QWR. I think the credit report that you're discussing is Mr. Morgan. I'm reading the statute. Right. So the credit reporting suppression provision is if there is a QWR receipt and there's no dispute and based on the well-plaid facts that Caliber treated both correspondents as QWR notices of error. That's it. They received it and they responded to it. That's paragraph 67, JA-19 and 20 as to Ms. Johnson. They treated Mr. Morgan's as a QWR NOE. That's paragraph 36 and 13. Once they treat it, and to your honor's question about statement of reasons, the case law. I'm sorry. I thought you were getting to my question. I'm still going back to the question that I was asking you, which is the credit reporting agency provision is limited to Caliber providing information regarding any payment. And what I'm having, what I was asking you is what payment are you alleging for Ms. Johnson was what payment was provided to the credit reporting agency? Right. They provided it's fled in the complaint that they received their letter and within there's specific paragraphs identifying for her and Mr. Morgan that they provided to each of the creditors derogatory information. So the underlying merit. What you don't allege, this is what I'm getting at, right? With Ms. Johnson, do you allege that the derogatory information was quote regarding any payment? The derogatory information that was reported was regarding her payments and that's described in her letter where she specifically asked them, your honor, to suppress that. She didn't have under the statute, but she did from October 18 to a period of 60 days after they completed the response. That's on JA 130. The denial that's exhibit one, JA 131, I would point out for Ms. Johnson also informed her of the right in response to the denial to submit a notice of error request for information, which is exactly what she did as well as appeal. Caliber treated both correspondents as QWR NLEs. Both correspondents provided a statement of reasons. It's true that Mr. Morgan's is not written by a lawyer. I don't think the standards under RESPA, the remedial statute that's been broadly interpreted by the sister circuits as you don't need to be precise here. There's no exacting nature on consumer. Do you agree that you have to provide some reasons? A statement of reasons has to include some reasons, which means some why. You have to answer the why question at least at some level. I owe nothing or I owe $16,000 or I owe $30,000, but some why there's an error. I don't disagree with your honor that there needs to be some explanation of what the statement of reasons are. I disagree with counsel's contention that the federal pleading standards apply to these letters. Mr. Morgan provided the why. He provided information, and I don't think he has to write this out in the letter because it's contained within the attachment as well, the various amounts that were claimed due. It's a statement. You agree a statement is something that has to be written. It has to be a statement. A statement is something that's written out. It's not a puzzle. It's a statement of reasons, so a statement of why. What I'm suggesting, your honor, is I don't think it has to be. In this case, it could be attachments like it was with Mr. Morgan with the credit report showing both Bank of America showing the loan with a zero balance, then Caliber showing it with a different balance, and the representative Thomas identifying a third balance plus hundreds of dollars in late fees. I think collectively, in the light most favorable to Mr. Morgan and the inferences therefrom, that qualifies as a statement. The servicer, and I'm going to run out of time here, but if I can just finish answering the question, these claims arise out of the servicer's duty to perform a reasonable investigation similar to what this court found previously under the Fair Credit Reporting Act. The servicer has access to the mortgage note that would tell it that this loan's term expired years before this correspondence was received. The servicer has that information. If it has enough information to look up the account, it can see. Then it has to perform a reasonable investigation and explain back to Mr. Morgan and to Ms. Johnson what the errors were. We see in Ms. Johnson's example, they did respond back. They acknowledged the error and they made the correction after treating her circumstances. Both letters should qualify. Caliber did not make this argument that they didn't warrant QWRs and OEs until it was sued. It treated them as such before it was sued. The district court erred in finding both correspondence don't qualify under the statute and the regulations, and we'd ask the court to reverse the ruling below. Thank you very much, and I'll rest on the rest of the brief. Thank you, Mr. Robinson. We appreciate it. We'll submit this case for consideration and resolve it promptly, we hope. Madam Clerk, we'll adjourn court until 9.30 tomorrow morning, and then the court will confer. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Stephanie D. Thacker, Julius N. Richardson